USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: ___3/27/18_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALFRED VITALONE,

                              Plaintiff,                    15-cv-8525 (JGK)

        - against -                                          MEMORANDUM OPINION
                                                             AND ORDER
THE CITY OF NEW YORK, ET AL.,

                              Defendants.

JOHN G. KOELTL, District Judge:

    The plaintiff, Alfred Vitalone, brings this action against
the City of New York and seventeen police officers seeking
relief pursuant to 42 U.S.C. § 1983 for violations of his
constitutional rights arising from his arrest after a traffic
stop.  The defendants now move for partial summary judgment
pursuant to Federal Rule of Civil Procedure 56(a).

    The motion is granted in part and denied in part.

                                I.

    The following facts are undisputed, unless otherwise noted.

    On June 24, 2014, the plaintiff was driving to City Hall in
Staten Island to get married.  Pl.'s Rule 56.1 Counterstatement
¶¶ 36; Vitalone Dep. 31.  The plaintiff's fiancé, Loren
Vitalone, future mother-in-law, Mary Matrazzo, and future
father-in-law, Santo Matrazzo, were in the car with the
plaintiff.  Vitalone Dep. 31.

John Granton, a New York City Police Department Officer, initiated a traffic stop of the plaintiff in front of 60 Bay Street. Pl.'s Rule 56.1 Counterstatement ¶ 146; Vitalone Dep. 38. After the plaintiff pulled over, Officer Granton approached the car and asked for the plaintiff's license, registration, and insurance card. Pl.'s Rule 56.1 Counterstatement ¶ 148. The plaintiff asked Officer Granton "what [he] did wrong" and Officer Granton replied that he observed the plaintiff using a cell phone while driving. Vitalone Dep. 41. The plaintiff, who believed he recognized Officer Granton from an interaction in a bar, said to Officer Granton "I think I know you." Vitalone Dep. 41. The plaintiff then gave Officer Granton his license, registration, and insurance card, and Officer Granton returned to his police vehicle. Pl.'s Rule 56.1 Counterstatement ¶¶ 151-52.

The plaintiff then realized where he recognized Officer Granton from and got out of his car and walked towards Officer Granton's police vehicle. Office Granton told the plaintiff to return to his car, and the plaintiff complied with that order. Vitalone Dep. 41-42.

About five minutes later, Officer Granton returned to the plaintiff's car and handed the plaintiff a ticket. Vitalone Dep. 43; L. Vitalone Dep. 27. The plaintiff took the ticket from Officer Granton and said, "I can't believe this is

2

happening. I am getting married. I wasn't on my cell phone."
Vitalone Dep. 43-44. The plaintiff testified that Officer
Granton then told him to get out of the car. Officer Granton
extended his expandable baton, and the plaintiff responded that
he was "not getting out of the car." Vitalone Dep. 44. The
plaintiff testified that he did not get out of the car because
he was frightened of Officer Granton. Vitalone Dep. 46.
Officer Granton called for back-up, and additional officers
appeared at the scene. Vitalone Dep. 45.

The parties dispute what happened after the additional
officers arrived on the scene and the circumstances of the
plaintiff's subsequent arrest.

The plaintiff testified that one of the officers who
arrived on the scene after Officer Granton's call asked the
plaintiff to turn the car off and step out of the car, and that
the plaintiff said he would get out of the car only if Officer
Granton stepped away. Vitalone Dep. 46-47; 56. The plaintiff
testified that, at that point, Officer Granton stepped away, and
the plaintiff turned off his car and stepped out. The plaintiff
testified further that "as soon as [he] got out of the car . . .
one [officer] grabbed [him] on the side." Vitalone Dep. 49, 58.
He testified that he "went with it" when the officers grabbed
him right after he stepped out of the car, and he did not
physically resist the arrest. Vitalone Dep. 59. In contrast,

the defendants assert that, after he stepped out of the car, the plaintiff physically resisted the arrest, by attempting to pull away from the officers, "lean[ing] back towards the car" and lifting his arms to avoid being handcuffed. Defs.' Rule 56.1 Statement ¶ 43, 45, 47-48.

Eventually the plaintiff was brought to the ground, handcuffed and brought to the squad car. He was taken in the squad car to the 120th Precinct, and he was released with a desk appearance ticket. Vitalone Dep. 98-99. He was ultimately charged with Resisting Arrest, Obstructing Governmental Administration, and Disorderly Conduct. Lax Decl. Ex. L. The plaintiff accepted an Adjournment with Contemplation of Dismissal to resolve the criminal charges. Vitalone Dep. 110.

A video, taken by a bystander, recorded much of the interaction, but intermittent traffic that passed by prevented an unobstructed view of the events. Both the plaintiff and the defendants claim that the video supports at least part of their narrative.

In his second amended complaint, the plaintiff brings claims against the individual officers for false arrest, excessive force, failure to intervene, malicious prosecution, and abuse of process. He also alleges that the defendants violated his right to a fair trial by providing false evidence

4

to the prosecutors. He furthers alleges a claim for Monell liability and an independent claim for supervisory liability.

## II.

The standard for granting summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if any evidence in the record from any source would enable a reasonable inference to be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Wesley-Dickson v. Warwick Valley Cent. Sch. Dist., 973 F. Supp. 2d 386, 390-91 (S.D.N.Y. 2013).

### III.

The defendants argue that the false arrest claim should be dismissed on summary judgment because there was probable cause for the officers to arrest the plaintiff. They argue in the alternative that, even if the officers were mistaken that there was probable cause, they are entitled to qualified immunity because the mistake was reasonable.

"[A]n arrest must be supported by probable cause or else it violates the Fourth Amendment." United States v. Valentine, 539 F.3d 88, 93 (2d Cir. 2008) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Section 1983, to the extent that it provides a remedy for violations of the Fourth and Fourteenth Amendments, protects an individual's right to be free from arrest without probable cause. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). When analyzing § 1983 claims for false arrest, courts generally look "to the law of the state in which the arrest occurred." Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004) (collecting cases). "Under New York law, a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined [the plaintiff] without [the plaintiff's] consent and without justification." Amore v. Novarro, 624 F.3d 522, 532 n.13 (2d Cir. 2010) (internal quotation marks and citation omitted). This requires the personal involvement of the defendant. Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006). "'The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983.'" Amore, 624 F.3d at 536 (quoting Weyant, 101 F.3d at 852). "Probable cause exists if at the time of the arrest 'the facts and circumstances within th[e officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a

prudent man in believing that the [suspect] had committed or was committing an offense.'" Id. (quoting Beck, 379 U.S. at 91) (alterations in original). See also Gutierrez v. City of New York, No. 13-cv-3502 JGK, 2015 WL 5559498, at *4 (S.D.N.Y. Sept. 21, 2015).

The defendants argue that there was probable cause for the officers to arrest the plaintiff for any one of three[1] crimes: (1) Criminal Solicitation in the Fifth Degree, (2) Disorderly Conduct, and/or (3) Resisting Arrest.[2]

With respect to Disorderly Conduct and Resisting Arrest, the defendants argue that, as a matter of law, there was probable cause to arrest the plaintiff for these offenses because there is documentary evidence of the incident, in the

---

[1] While the plaintiff was ultimately charged with Obstruction of Governmental Administration, the defendants do not argue in their summary judgment papers that there was probable cause for the plaintiff's arrest for this crime. Rather, the defendants only argue that there would be qualified immunity to arrest for Obstruction of Governmental Administration if there was probable cause to arrest for another offense. Defs.' Opp'n Br. 12. Therefore, the defendants do not argue that Obstruction of Governmental Administration was an independent basis for probable cause or qualified immunity to arrest and the Court will not consider whether there was probable cause to arrest on that basis.

[2] The plaintiff argues that the only crimes for which the arresting officer can have probable cause are those for which the plaintiff was ultimately charged, but that is incorrect. The officer need only have probable cause to believe the plaintiff was committing a crime -- the plaintiff need not ultimately be charged with that crime for it to satisfy the probable cause requirement. See Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) (Sotomayor, J.).

form of a video taken by a bystander, that clearly shows the actions taken by the plaintiff that gave the officers probable cause to arrest. The Court disagrees.

A person is guilty of Resisting Arrest when he "intentionally prevents or attempts to prevent a police office or peace officer from effecting an authorized arrest of himself or another person." N.Y. Penal L. § 205.30. A person is guilty of Disorderly Conduct "when, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: (1) He engages in fighting or in violent, tumultuous or threatening behavior; . . . (5) He obstructs vehicular or pedestrian traffic; or . . . (7) He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose." N.Y. Penal L. § 240.20.

The defendants assert that the video clearly shows that the plaintiff was fighting the officers, obstructing traffic and creating a hazardous traffic condition for people on the roadway, that they argue demonstrates there was probable cause to arrest the plaintiff for Disorderly Conduct. They further assert that the video shows that the plaintiff struggled and resisted the efforts of the officers for fifteen seconds before he was finally subdued and handcuffed, and that these actions demonstrate there was probable cause to arrest the plaintiff for Resisting Arrest.

However, the video does not resolve the disputed issues of
fact as to what actually happened at the time of the plaintiff's
arrest.   The video was taken by a bystander who was standing
across the avenue from the events at issue with several lanes of
traffic passing between the videographer and the crucial events.
The audio is also not sufficiently clear to hear the actual
interchange between the plaintiff and the officers.   The video
also does not show the critical moments when the officers first
began to arrest the defendant.   It is therefore impossible to
determine from the video whether the plaintiff took any initial
steps to resist arrest or engaged in conduct that could be
considered disorderly.

Further, it is not clear from the video whether the
defendant was resisting the arrest while the officers were
physically arresting him, because he is completely surrounded by
officers and the view of the plaintiff is obstructed.   The video
does not show what the plaintiff was doing with his arms and
legs, or what he was saying, if anything.   While there does
appear to be some type of physical scuffle, it is not clear from
the video that it was caused by the plaintiff or was merely the
product of many officers attempting to arrest the plaintiff at
the same time.

The remaining evidence regarding what happened at the time
of the arrest comes from the testimony of the plaintiff, the

arresting officers and third-party witnesses. Reviewing this testimony in the light most favorable to the plaintiff, there are issues of fact that preclude summary judgment.

The plaintiff testified at his deposition that Officer Granton came to his car with a summons, and that he took the summons from the Officer. Vitalone Dep. 43. Officer Granton asked the plaintiff to get out of the car and extended his expandable baton. Vitalone Dep. 44. The plaintiff refused to get out of the car because he feared for his own safety. Vitalone Dep. 45-46. The plaintiff testified that he believes Officer Granton then called for backup, because he saw Officer Granton pick up his radio, and several additional officers subsequently arrived on the scene. Vitalone Dep. 45. One of the officers who arrived on the scene then asked the plaintiff to turn off the car and step out of the car, and the plaintiff said he would get out of the car only if Officer Granton stepped away. Vitalone Dep. 46-47, 56.

The plaintiff testified that, at that point, Officer Granton stepped away, so he turned off his car and stepped out. He further testified that "as soon as [he] got out of the car . . . one [officer] grabbed [him] on the side." Vitalone Dep. 49, 58. The plaintiff denied pulling away from the officers or "shov[ing]" them when he stepped out of the car. Vitalone Dep. 59. He also denied ever "striking a police

11

officer in the face" during the incident. Vitalone Dep. 73:14-16. He also denies ever spitting or trying to bite any of the officers. Vitalone Dep. 78. He further testified that he "went with it" when the officers grabbed him right after he stepped out of the car. Vitalone Dep. 59.

Further, Loren Vitalone, the plaintiff's then-fiancé who was in the car during the incident, testified that she saw the officers grab the plaintiff's hands when he "first stepped out of the vehicle". L. Vitalone Dep. 45. Mr. Aziz, a third-party who took the video of the arrest, testified that he did not see the plaintiff physically resisting the arrest. Aziz Dep. 43-44. He testified that he did not see the plaintiff try to assault an officer or bite or spit. He saw the plaintiff get out of the car with his hands halfway up and then an officer tried to grab the plaintiff when the plaintiff said it was not him. Aziz Dep. 43-44.

The defendants tell a very different story. They argue that the plaintiff was disruptive, yelled at the officers, and physically resisted arrest. Officer Granton testified that the plaintiff responded to his request to get out of the car by continually refusing and testified that he was "verbally aggressive" and "shouting". Granton Dep. 69. Officer Otterbeck testified that the plaintiff was "actively resisting" and that the officers were "trying to put [the plaintiff's] hands behind

12

his back". Otterbeck Dep. 24. He also testified that he was "attempting to get [the plaintiff's] hands behind his back" once the plaintiff was on the ground. Otterbeck Dep. 25. Officer Sanchez testified that the plaintiff was physically removed from his car by the officers. Sanchez Dep. 18. Officer Corsello testified that the plaintiff was "refusing to be handcuffed. He was passive but not putting his hands behind his back." Corsello Dep. 21.

Officer Amaty testified that, when the plaintiff got out of the car, he "was a little irate, [and] when another police officer went to grab his wrist and put a handcuff on him, he started flailing his arms and resisting." Amaty Dep. 14. He also testified that he was hit in the face and he believes he was hit by the plaintiff. Amaty Dep. 16, 18.

These are drastically different accounts of the same events and represent a genuine dispute as to what happened when the plaintiff stepped out of the car and during the subsequent arrest. These facts are plainly material because they go to the heart of whether the police officers had probable cause to arrest the plaintiff for Disorderly Conduct or Resisting Arrest. Accepting the plaintiff's version of events, as the Court must on a motion for summary judgment, a jury could reasonably conclude that the police officers did not have probable cause to arrest the plaintiff for Disorderly Conduct or Resisting Arrest,

13

because he did not fight or resist them in any way after he was removed from the car. He simply pulled over and got out of his car where he was directed to do so by the officers -- and did not otherwise physically or verbally resist the arrest in a disorderly manner. It is not for the Court to decide on a motion for summary judgment where the truth lies between the two conflicting pictures.

Therefore, the Court cannot grant summary judgment on the basis of probable cause to arrest for Disorderly Conduct or Resisting Arrest because there remains a genuine issue of material fact regarding the actions of the plaintiff and the officers at the time of arrest.

The defendants also argue that there was probable cause to arrest the defendant for Criminal Solicitation in the fifth degree. A person is guilty of that offense when, "with intent that another person engage in conduct constituting a crime, he solicits, requests, commands, importunes or otherwise attempts to cause such other person to engage in such conduct." N.Y. Penal L. § 100.00. The defendants argue that there was probable cause to arrest the plaintiff for this offense because he repeatedly insisted that he knew Officer Granton and stated that "I can't believe this is happening. I am getting married. I wasn't on the cell phone." Vitalone Dep. 43-44. While the defendants argument is not wholly clear, they apparently infer

14

from those comments that the plaintiff was trying to convince
Officer Granton to drop the ticket either because they knew each
other or out of pity because the plaintiff was on his way to his
wedding. However, these statements do not on their face
indicate that the plaintiff was intending to offer Officer
Granton a bribe, but are more reasonably interpreted as
expressions that the plaintiff was upset about getting the
traffic ticket on the way to his wedding and that he wanted
Officer Granton to acknowledge that they knew each other.

There is thus plainly an issue of fact regarding whether a
reasonable person could infer that the plaintiff was committing
a crime. A jury could fairly determine on this record that it
was unreasonable for Officer Granton to infer from the
plaintiff's statements that he intended to importune Officer
Granton to accept a bribe.[3]

_____

[3] The defendants also argue that the officers who arrived on the
scene after Officer Granton called for back-up are entitled to
summary judgment on the claim of false arrest because they are
entitled to rely on the representations of Officer Granton that
there was probable cause to arrest the plaintiff. They also
argue in the alternative that there was at least arguable
probable cause, and they are therefore entitled to qualified
immunity. Here, there are issues of fact which preclude a
finding that there was probable cause or arguable probable
cause. It is not possible on this record to distinguish among
the officers as to who allegedly had firsthand knowledge of the
circumstances of plaintiff's arrest and who learned of the
circumstances from other officers. While an officer can
reasonably rely on the representations from fellow officers, it
is not possible on this record to determine which officers

15

Because there are issues of fact relating to the actions of the plaintiff and the officers at the time of the arrest, and these issues relate to the reasonableness of the officers' belief that there was probable cause to arrest, the motion for summary judgment on the basis of qualified immunity is also denied. See Munoz v. City of New York, No. 04-cv-1105 (JGK), 2008 WL 464236, at *6 (S.D.N.Y. Feb. 20, 2008).[4]

Similarly, because the Court cannot grant summary judgment dismissing the false arrest claim, the Court cannot dismiss the claim of failure to intervene to prevent a false arrest. The

---

learned what from fellow officers. Those officer who personally observed what was happening could not rely on secondhand accounts. And the record has not been developed as to which defendants learned what and when they learned those details. Therefore, because there are issues of fact regarding the existence of probable cause -- or arguable probable cause -- it is not possible to grant summary judgment to any of the defendants on the claim of false arrest.

[4] The defendants also argue that Officer Granton is entitled to qualified immunity because he could have reasonably believed that the plaintiff was committing the crime of Obstructing Governmental Administration when he refused to get out of the car after Officer Granton instructed him to. However, as discussed above, there are plainly issues of fact with respect to the plaintiff's actions when he was asked by Officer Granton to step out of the car. Indeed, the defendants' argument for qualified immunity to arrest for the crime of Obstruction of Governmental Administration is premised on a finding that there was probable cause -- or arguable probable cause -- to arrest for one of the other offenses. But there are issues of fact that preclude a finding as a matter of law that there was probable cause -- or arguable probable cause -- for the arrest for any other crime.

16

plaintiff does not assert any additional arguments in support of dismissing that claim.

IV.

The defendants have moved for summary judgment on the claim for excessive force on behalf of defendants Granton, Mitchell, Amaty, Otterbeck, Bannon, Anzelone, Saminath, Edwards, Gueli, Corsello, and Trabuscio.

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under the Amendment's 'reasonableness' standard." Imani Brown v. City of New York, No. 14-2611, 2015 WL 4924395, at *5 (2d Cir. Aug. 19, 2015) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). "Because the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa." Beier v. City of Lewiston, 354 F.3d 1058, 1064 (9th Cir.2004) (citing Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 921-22 (9th Cir. 2001)); see Jones v. Parmley, 465 F.3d 46, 62 (2d Cir. 2006) (Sotomayor, J.) (rejecting argument that "any force employed by a police officer would be unlawful so long as probable cause did not exist"); Zellner v. Summerlin, 494 F.3d 344, 378 (2d Cir. 2007). Because "the lawfulness of an arrest is irrelevant to an excessive force analysis," see Sebright v. City of Rockford, 585

17

F. App'x 905, 907 (7th Cir. 2014) (per curiam) (unpublished) (collecting cases), the plaintiff's excessive force claim must be analyzed separately from the false arrest claim. See also Gutierrez, 2015 WL 5559498, at *6.

As an initial matter, at argument on the current motion, counsel for the plaintiff stated that the plaintiff was pursuing an excessive force claim against Otterbeck, Saminath, Gueli, Amaty, Granton, Maldonado, and Desiderato. Jan. 18, 2018 Hr'g Tr. 6-7. The plaintiff has therefore abandoned his claim for excessive force against the remaining individual defendants, namely Mitchell, Bannon, Anzelone, Edwards, Corsello, Trabuscio, McAvoy, G. Sanchez, Russotto and L. Sanchez.

The remaining moving[5] Officers, namely Granton, Amaty, Otterbeck, Saminath, and Gueli, argue that the excessive force claim against them should be dismissed because the video footage shows that none of them used any force beyond what was necessary to arrest the plaintiff.

However, the video does not resolve the factual issues as to whether excessive force was used. For much of the video, all that can be seen are the officers surrounding the plaintiff. It is not possible to see which of the nearly 15 officers surrounding the plaintiff are touching the plaintiff during the

_____

[5] The defendants have not moved to dismiss the excessive force claim against Officers Maldonado and Desiderato.

arrest, how they are touching him, and to what extent they are using force to restrain him -- or whether that force was necessary to restrain him. The video in fact supports the conclusion that the plaintiff was forced to the ground with his head against the pavement while bystanders screamed.

The video, as well as testimony in the record, supports the contention that each of the defendants who dispute the accusation of excessive force was involved in the arrest and was touching the plaintiff at some point during the arrest. Officer Otterbeck testified that he got "physically involved" with the plaintiff by "attempt[ing] to grab his legs and bring him to the ground". Otterbeck Dep. 24. Officer Saminath testified that he was physically involved in the struggle and grabbed the plaintiff's arm. Saminath Dep. 28. The plaintiff testified that Officers Gueli and Amaty grabbed him when he stepped out of his car. Vitalone Dep. 61. Officer Granton testified that he attempted to handcuff the plaintiff during the altercation and that the plaintiff resisted being placed in handcuffs, but that Officer Granton ultimately placed the plaintiff in handcuffs. Granton Dep. 77, 83.

The plaintiff also offered testimony regarding the force that was used during the arrest. While he is unsure which officer was the source, the plaintiff testified that he was punched in the face and the back when he was down on the ground.

Vitalone Dep. 74. He also testified that there was a knee in his back when he was brought to the ground. Vitalone Dep. 77.

Taking the video evidence and the plaintiff's testimony together, a reasonable jury could find that each Excessive Force Defendant was physically involved in the plaintiff's arrest and that the officers used excessive force in arresting the plaintiff. Therefore, there remain genuine issues of material fact with respect to the events of the arrest that bar summary judgment on the excessive force claim against defendants Otterbeck, Saminath, Gueli, Amaty, and Granton.[6]

## V.

The plaintiff has also brought a claim pursuant to 42 U.S.C. § 1983 alleging that his right to a fair trial was violated because Officer Granton gave false testimony that was used to draft the criminal complaint against the plaintiff.

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C.

---

[6] The plaintiff therefore has an excessive force claim remaining against defendants Otterbeck, Saminath, Gueli, Amaty, Granton, Maldanado and Desideroto. The plaintiff also has asserted a claim against all of the individual defendants for failure to intervene in the use of excessive force. The defendants have not moved to dismiss that claim.

20

§ 1983." Betts v. Shearman, 751 F.3d 78, 83-84 (2d Cir. 2013)

(quoting Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130

(2d. Cir. 1997)). "A plaintiff may bring a fair trial claim

even if the plaintiff's criminal case is dismissed before trial,

and even if the officer had probable cause to arrest." Robinson

v. City of New York, No. 15-cv-5850, 2017 WL 2414811, at *4

(S.D.N.Y. June 1, 2017) ("'[D]enial of a right to a fair trial'

is somewhat of a misnomer.").

Officer Granton argues that the claim should be dismissed

on summary judgment because he has absolute immunity for the

testimony the plaintiff claims was false.

Law enforcement officers enjoy "absolute immunity from any

§ 1983 claim based on the witness' testimony" before a grand

jury, even if that testimony is perjurious. Rehberg v. Paulk,

566 U.S. 356, 369 (2012). However, the absolute immunity for

grand jury testimony does not extend to all pre-indictment

testimony. Coggins v. Buonora, 776 F.3d 108, 113 (2d Cir. 2015)

("[I]t makes sense to afford [officers] less protection in

contexts other than the grand jury room."); see also Rehberg,

566 U.S. at 1507 n.1 (absolute immunity does not apply to "law

enforcement officials who falsify affidavits . . . and fabricate

evidence"). Rather, so long as the plaintiff can make out a

claim without relying on the grand jury testimony, the immunity

does not attach. Coggins, 776 F.3d at 113 (holding that

immunity did not apply to allegedly false statements made in a police report, police radio transmissions, and statements made to the district attorney); see also Nnodimele v. Derienzo, No. 13-cv-3461, 2016 WL 337751, at *13 (E.D.N.Y. Jan. 27, 2016) ("[Absolute] immunity does not cover an officer's forwarding of fabricated evidence to prosecutors.").

The basis for the plaintiff's claim is a deposition transcript containing allegedly false testimony that was signed by Officer Granton and used by a non-party officer to draft a criminal complaint. The plaintiff's claim is not based on any grand jury testimony -- indeed, there was no grand jury indictment. Therefore, the absolute immunity set forth in Rehberg plainly does not apply in this case. See Garnett v. Undercover Officer G0039, No. 13-cv-7083, 2015 WL 1539044, at *7-8 (S.D.N.Y. Apr. 6, 2015) (absolute immunity did not shield the defendant's police report and criminal complaint which laid the groundwork for the plaintiff's prosecution) aff'd, 838 F.3d 265 (2d Cir. 2016); Rucks v. City of New York, 96 F. Supp. 3d 138, 150-51 (S.D.N.Y. 2015) (absolute immunity did not apply to allegedly false statements made before the indictment by officers to the ADA in police reports that allegedly persuaded the ADA to bring felony charges against the plaintiff).

Therefore, Officer Granton's motion for summary judgment dismissing the plaintiff's claim of denial of the right to a fair trial is denied.

## VI.

The plaintiff has also brought claims for abuse of process and malicious prosecution, as well as independent claims for supervisory liability and Monell liability. At argument on the current motion, the plaintiff agreed to dismiss these claims. Accordingly, the plaintiff's claims for malicious prosecution, abuse of process, supervisory liability and Monell liability are dismissed.

## VII.

Lastly, in their reply papers, the defendants have brought a motion to strike the plaintiff's Rule 56.1 Statement as abusive and have sought fees for making that motion. That motion is denied. While the plaintiff's Counter Rule 56.1 Statement was unnecessary, it was not abusive and did help to illustrate some of the disputed facts. Therefore, the motion to strike is denied.

**CONCLUSION**

The Court has considered all of the remaining arguments of the parties. To the extent not specifically addressed above, they are either moot or without merit. For the reasons explained above, the defendants' motion for summary judgment is denied in part and granted in part. The Clerk is directed to close all pending motions.

**SO ORDERED.**

Dated:    **New York, New York**
            **March 27, 2018**

                              **John G. Koeltl**
                   **United States District Judge**