UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                                              :

ALFRED VITALONE,

                           Plaintiff,                         OPINION & ORDER

                         -against-                      15 Civ. 8525 (GWG)

THE CITY OF NEW YORK, et al.,

                         Defendants.
---------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Alfred Vitalone brought this action against defendants the City of New York and seventeen police officers seeking relief pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights arising from his arrest after a traffic stop in 2014. Plaintiff's first attorney, Michael Colihan, was terminated as counsel in March 2018. Plaintiff's current attorneys — Vikrant Pawar, Robert Blossner, and Edward Zaloba (sometimes referred to collectively as "the Pawar attorneys") — took over the case in May 2018. The case settled in December 2018 pursuant to an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure. The accepted Offer of Judgment included an award of $85,000 for costs and attorney's fees.

      Colihan and the Pawar attorneys now seek to have this Court resolve their dispute over the disbursement of attorney's fees resulting from the settlement.[1] The parties have consented to

---

[1] See Notice of Motion, filed Mar. 28, 2019 (Docket # 221) ("Notice of Mot."); Second Declaration of Michael Colihan in Opposition to the Motion to Reopen this Case, filed Apr. 11, 2019 (Docket # 224) ("Second Colihan Decl."); Declaration of Michael Colihan in Opposition to the Motion to Reopen this Case, filed Apr. 11, 2019 (Docket # 225) ("Colihan Decl."); Plaintiff's Memorandum of Law in Opposition to the Motion of Vik Pawar, a/k/a Vikrant Pawar to Reopen this Action, filed Apr. 11, 2019 (Docket # 226) ("First Colihan Mem."); Letter from Vik Pawar, filed Apr. 23, 2019 (Docket # 227); Letter from Michael Colihan, filed May 31, 2019 (Docket # 229); Letter from Vik Pawar, filed June 5, 2019 (Docket # 231); Letter from Michael Colihan, filed June 6, 2019 (Docket # 232); Letter from Michael Colihan, filed June 14, 2019

the disposition of this application by the undersigned under 28 U.S.C. § 636(c). For the reasons stated below, Colihan is awarded $12,701 in costs and $32,535 in fees.

I. BACKGROUND

   A. Factual and Procedural History

Although the details of plaintiff's claim are not critical to deciding the fee dispute, a short summary of the background will provide some context for the attorneys' litigation efforts.

On June 24, 2014, plaintiff was driving to City Hall in Staten Island to get married when a New York City Police Department Officer initiated a traffic stop. Vitalone v. City of New York, 2018 WL 1587591, at *1 (S.D.N.Y. Mar. 27, 2018). When plaintiff asked the officer "what [he] did wrong," the officer said he had "observed the plaintiff using a cell phone while driving." Id. Eventually, the officer issued plaintiff a ticket, and when plaintiff protested, the officer demanded plaintiff exit the car. Id. Plaintiff refused because he was "frightened of" the officer. Id. The officer apparently called for back-up and several other officers eventually arrived on the scene. See id. Plaintiff exited the car after he saw the original officer had stepped away from the vehicle, but once he did so, officers "grabbed" him. Id. Plaintiff was eventually

---

(Docket # 235); Declaration of Michael Colihan in Support of an Application for Legal Fees, filed June 18, 2019 (Docket # 238) ("Colihan Fees Decl."); Second Declaration of Michael Colihan in Support of an Application for Legal Fees, filed June 18, 2019 (Docket # 239) ("Second Colihan Fees Decl."); Third Declaration of Michael Colihan in Support of a Motion for Attorney's Fees, filed June 18, 2019 (Docket # 240) ("Third Colihan Fees Decl."); Fourth Declaration of Michael Colihan in Support of his Motion for Attorney's Fees, filed June 18, 2019 (Docket # 241) ("Fourth Colihan Fees Decl."); Memorandum of Law in Support, filed June 19, 2019 (Docket # 242) ("Colihan Fees Mem."); Declaration, filed July 15, 2019 (Docket # 254) ("Second Pawar Decl."); Memorandum of Law in Support of Attorney Fees, filed July 16, 2019 (Docket # 255) ("Pawar Mem."); Reply Memorandum in Support of a Motion for Fees, filed Aug. 1, 2019 (Docket # 257) ("Colihan Reply Mem."); Final Declaration of Michael Colihan in Support of an Application for Legal Fees, filed Aug. 1, 2019 (Docket # 258) ("Final Colihan Fees Decl."); Fifth Declaration of Michael Colihan in Support of his Motion for Fees, filed Aug. 16, 2019 (Docket # 264) ("Fifth Colihan Fees Decl.").

subdued, handcuffed, brought to a squad car, and taken to the local precinct. Id. at *2. He was charged with resisting arrest, obstructing governmental administration, and disorderly conduct. Id.

Plaintiff brought suit against individual officers and the City of New York under 42 U.S.C. § 1983 for excessive force, false arrest, malicious prosecution, abuse of process, failure to intervene, as well as other claims. See Second Amended Complaint, filed May 24, 2017 (Docket # 118), ¶¶ 40-90. In his March 27, 2018, opinion denying defendants' motion for summary judgment, Judge Koeltl found that the parties' "drastically different accounts of the same events [that occurred on June 24, 2014] . . . represent a genuine dispute as to what happened when the plaintiff stepped out of the car and during the subsequent arrest." Vitalone, 2018 WL 1587591, at *5.

The day before the summary judgment opinion issued, March 26, 2018, Colihan was suspended from practice in the Southern District of New York for reasons unrelated to this lawsuit. See Opinion & Order dated Mar. 20, 2019 (annexed as Ex. 30 to Colihan Fees Decl.) ("App. Div. Order"). When Colihan informed Judge Koeltl of the suspension, Judge Koeltl on March 29, 2018, terminated Colihan as attorney for plaintiff and stayed the case for 60 days so plaintiff could retain new counsel. Order, filed Mar. 29, 2018 (Docket # 147). Pawar and Blossner appeared on plaintiff's behalf on May 7, 2018. (Docket ## 148-49). On May 31, 2018, Judge Koeltl ordered the parties to file pretrial materials, including motions in limine, requests to charge and proposed voir dire, by July 20, 2018, and to be ready for trial starting on September 17, 2018. Amended Civil Scheduling Order, filed May 31, 2018 (Docket # 150). These deadlines were extended a number of times in June and July as the parties engaged in settlement discussions and appeared for a settlement conference held on August 9, 2018.

3

The case did not settle at that time and the first pretrial submissions were ultimately filed by Pawar on August 14, 2018, and August 16, 2018. (Docket ## 170-172). Pawar made additional submissions after that date, including materials opposing the defendants' motion in limine. (Docket ## 182, 192-194).

On December 11, 2018, Judge Koeltl set a trial date of January 14, 2019 (Docket # 208), but several days later, plaintiff filed a submission indicating that a Rule 68 offer of judgment had been accepted. Notice of Acceptance, filed Dec. 17, 2018 (Docket # 210). Judgment was entered on December 17, 2018. Judgment, filed Dec. 17, 2018 (Docket # 214). The judgment reflected an award of $105,001 for plaintiff, and $85,000 for costs, expenses, and fees for plaintiff's counsel. Id.

B. The Instant Dispute

In March 2019, Pawar filed a letter requesting that the court re-open the case in light of the fact that Colihan had, after the action had settled, asserted a charging lien under state law seeking a portion of the attorney's fees from plaintiff's settlement. See Letter from Vik Pawar, Robert Blossner, and Edward Zaloba, filed Mar. 20, 2019 (Docket # 217). In an application for fees filed shortly thereafter, Pawar argued that "[w]hile it is true that Mr. Colihan did a great deal of work on this matter, we had to review each and every facet of his work in a limited period of time and prepare for trial." Declaration, filed Mar. 28, 2019 (annexed to Notice of Mot.) ("First Pawar Decl."), ¶ 9. Pawar states he "readily agreed that Mr. Colihan should receive a portion of the attorney fee[s] in this matter for his work prior to his suspension," but that he and his associates "feel that Mr. Colihan is being unreasonable in his demanding the lion's share of the fee," because while Colihan "did a great deal of work over a period of 2-3 years, by the very nature of trial practice . . . we had to duplicate his labor in addition to getting ready for trial" and

4

"spent an equal amount if not more to absorb this work within 2-3 months." Id. ¶¶ 26-27. Pawar requested that the disbursement be as follows: $15,000 in expenses to Colihan; an additional $32,500 in fees to Colihan; $17,500 to Zaloba; and $35,000 to Pawar and Blossner. Id. ¶ 31.

Colihan filed opposition papers seeking a higher percentage of the attorney's fees. See First Colihan Mem.; Colihan Decl.; Second Colihan Decl. In his brief, Colihan first pointed out that the division of fees requested by Pawar was "a math[e]matical impossibility," as the amounts exceeded the $85,000 fee recovery. First Colihan Mem. at 15. Colihan recounted his work on the case, which included attending 20 depositions, arguing that his fee should "come to a minimum of $108,225 and a high of $124,875" based on an hourly rate of $325 or $375. Id. at 20-21. In the end, Colihan states that he performed "90% of the services" in this action. Id. at 21.

On April 26, 2019, the Court held a conference attended by Colihan, Pawar, Blossner, and a lawyer representing defendants. See Transcript of Proceedings from Apr. 26, 2019, filed June 25, 2019 (Docket # 248) ("Apr. 26 Conference Tr."), at 2. At the conference, the Court stated that because Colihan was asserting a charging lien under New York Judiciary Law § 475, the parties would need to address certain factors missing from their initial papers and set forth their arguments regarding those factors in additional submissions. Id. at 4-5. The Court also inquired as to the nature of the billing records the attorneys had kept. Colihan said he kept contemporaneous time records, which went back three years and were "messy." Id. at 5-6.[2]

---

[2] While the court transcript indicates that Colihan also stated that he did not keep contemporaneous records, Apr. 26 Conference Tr. at 6, Colihan later asserted that this was a transcription error and that it was actually Blossner who made this statement. See Affirmation of Michael Colihan in Support of a Motion for Attorney's Fees as per the Order of Judge Gorenstein dated August 9, 2019, dated Aug. 13, 2019 (Docket # 263) ("Supp. Colihan Aff."), ¶¶ 1-2; Second Pawar Decl. ¶ 3 (noting Blossner's time records were "reconstructed"). We accept Colihan's unopposed representation on this point.

5

Blossner stated he did not kept such records, though he understood that Zaloba "may have." Id. at 6. In light of these statements, the Court explained that it would allow counsel an additional opportunity to submit documentation supporting their applications, including contemporaneous time records Id. at 7.

The parties subsequently filed their supplemental submissions. In his supplemental memorandum, Colihan maintained he was entitled to 90% of the fees recovered based on New York Judiciary Law § 475 and quantum meruit, or $76,500. See Colihan Fees Mem. at *6-10.[3]

For his part, Pawar argues Colihan's application is deficient because (1) Colihan does not have a retainer agreement with plaintiff or documentation indicating plaintiff ever assigned his attorney's fees to Colihan, Pawar Mem. at 7; (2) Colihan is in violation of 22 NYCRR § 1215.1 because he has not shown the existence of a letter of engagement regarding his representation of plaintiff, id. at 7-8; and (3) even if those failures are ignored, Colihan's "actions (or inactions) in the litigation should be factored into a downward departure of the fees and hourly rate he seeks because of his performance," id. at 8-11. Pawar and his colleagues also filed sworn declarations in support of their fee applications indicating that Pawar's application was based on contemporaneous time records, that Blossner's application was based on "reconstructed time records," and that Zaloba's application was based on "contemporaneous/reconstructed time records." Second Pawar Decl. ¶¶ 2-4; see annexed exhibits 2, 3, 3a, 4, 4a to Second Pawar Decl.

Following receipt of these submissions, and because none of the attorneys other than Pawar described how their time records were maintained or reconstructed, the Court ordered Colihan, Blossner, and Zaloba to provide additional sworn declarations or affidavits explaining

---

[3] Some documents filed by Colihan do not contain page numbers. Thus, page numbers identified by "*__" refer to the pagination assigned by the Court's ECF system.

how their records were reconstructed with specific examples and to provide actual copies of the contemporaneous records to the extent they existed. Order, filed Aug. 9, 2019 (Docket # 259); Order, filed Aug. 12, 2019 (Docket # 260). Counsel responded by filing submissions. See Declaration (annexed to Letter from Vik Pawar, filed Aug. 12, 2019 (Docket # 261)) ("Blossner Supp. Decl."); Declaration, filed Aug. 13, 2019 (Docket # 262) ("Zaloba Supp. Decl."); Supp. Colihan Aff. These submissions are described further in Section II.C below.

II. DISCUSSION

    A. Governing Law

We begin by noting that "[w]henever a district court has federal jurisdiction over a case, it retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees." Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 225 (2d Cir. 2004) (citations and internal quotation marks omitted); accord In re Austrian & German Bank Holocaust Litig., 317 F.3d 91, 98 (2d Cir. 2003); Mason v. City of New York, 2016 WL 2766652, at *2 (S.D.N.Y. May 12, 2016). Here, we are called upon to adjudicate Colihan's entitlement to fees under his charging lien. New York law governs disputes over a charging lien in federal courts sitting in New York. Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 178 (2d Cir. 2001).

In New York, "[t]he charging lien was created by the common-law courts as a device to protect an attorney by 'disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained.'" LMWT Realty Corp. v. Davis Agency Inc., 85 N.Y.2d 462, 469 (1995) (quoting Goodrich v. McDonald, 112 N.Y. 157, 163 (1889)); accord In re Gates, 51 A.D. 350, 352-53 (2d Dep't 1900). The charging lien is codified in New York Judiciary Law § 475, which states that an attorney "who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict,

report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come[.]" "[A]n attorney need not be counsel of record at the time a plaintiff receives judgment or settlement proceeds in order to have a lien on those proceeds, so long as the attorney was counsel of record at one point in the proceedings." Petition of Harley & Browne, 957 F. Supp. 44, 48 (S.D.N.Y. 1997) (citing Klein v. Eubank, 87 N.Y.2d 459, 462 (1996)).

"New York law holds, albeit implicitly so, that an attorney has standing to pursue an action under Section 475 against another attorney for fees due to the attorney from his former client." Ray Legal Consulting Grp. v. Gray, 37 F. Supp. 3d 689, 698 (S.D.N.Y. 2014) (citing, inter alia, Cohen v. Grainger, Tesoriero & Bell, 81 N.Y.2d 655, 658 (1993), and Smerda v. City of New York, 7 A.D.3d 511, 512 (2d Dep't 2004)). "[W]hen the dispute is between attorneys, . . . [t]he discharged attorney may elect to receive compensation immediately based on quantum meruit or on a contingent percentage fee based on his or her proportionate share of the work performed on the whole case." Cohen, 81 N.Y.2d at 658 (citing Lai Ling Cheng v. Modansky Leasing Co., 73 N.Y.2d 454, 458 (1989)); accord Budin, Reisman, Kupferberg & Bernstein, LLP. v. Law Offices of Rosemarie Arnold, 79 F. App'x 460, 461 (2d Cir. 2003) (summary order); Varga v. Rent-A-Ctr. E., Inc., 2012 WL 6626284, at *3 (N.D.N.Y. Dec. 19, 2012); Abenante v. Star Gas Corp., 33 A.D.3d 638, 639 (2d Dep't 2006). "[W]hen attorneys agree to put off getting a quantum meruit recovery up front [upon discharge], a contingent fee basis should be presumed, with the discharged attorney receiving a 'prorated share.'" Budin, 79 F. App'x at 461 (quoting Cohen, 81 N.Y.2d at 660); accord Hervochon v. Iona Coll., 2019 WL 2451295, at *2 (S.D.N.Y. Jan. 18, 2019); Russo v. City of New York, 48 A.D.3d 540, 541 (2d Dep't 2008) ("Where there is a fee dispute between attorneys, the amount due an outgoing

8

attorney is based on the proportionate share of the work performed.") (citing Lai Ling Cheng, 73 N.Y.2d at 457-58).

Here, Colihan was suspended from practice in the Southern District of New York effective March 26, 2018. App. Div. Order at 1-2, 5; Order, filed Mar. 29, 2018 (Docket # 147). He was then terminated as attorney for plaintiff in this litigation on March 29, 2018. Id. The parties agree that Colihan should receive a "prorated share" of the settlement amount set aside for attorney's fees in dispute. Budin, 79 F. App'x at 461; Cohen, 81 N.Y.2d at 660.

"In assessing the proportionate contributions," of prior and current counsel, courts consider as factors "'the time and labor spent by each, the actual work performed, the difficulty of the questions involved, the skill required to handle the matter, the attorney's skills and experience, and the effectiveness of counsel in bringing the matter to resolution.'" Mason, 2016 WL 2766652, at *4 (quoting Buchta v. Union Endicott Cent. Sch. Dist., 296 A.D.2d 688, 689-90 (3d Dep't 2002)) (bracketing omitted); accord Agence France Presse v. Morel, 2015 WL 13021413, at *8 (S.D.N.Y. Mar. 23, 2015), aff'd, 645 F. App'x 86 (2d Cir. 2016); Cruz v. Olympia Trails Bus Co., 2005 WL 3071473, at *3 (S.D.N.Y. Nov. 14, 2005); Foppiano v. City of New York, 2002 WL 31202716, at *4 (S.D.N.Y. Sept. 25, 2002); Pearse v. Delehanty, 105 A.D.3d 1023, 1023-24 (2d Dep't 2013); Janes v. 2630 Attica Rd., Inc., 59 Misc. 3d 1202(A), 2016 WL 11004395, at *1 (Sup. Ct. 2016), aff'd, 159 A.D.3d 1427 (4th Dep't 2018); Warren v. Meyers, 187 Misc. 2d 668, 675-76 (Sup. Ct. 2001).

"[T]he determination of an appropriate sum for an attorney's charging lien is 'committed to the sound discretion of the trial court,'" and thus a "'court is not required to precisely spell out how it weighed the various factors making up the fee allowed.'" Agence France Presse, 2015 WL 13021413, at *8 (quoting Ocean World Lines, Inc. v. Atlant (USA) Inc., 2008 WL 1776415,

9

at *2 (S.D.N.Y. Apr. 17, 2008)). Accordingly, in determining the proper allocation of fees in the case of a charging lien in New York, courts need not engage in the "lodestar" analysis of calculating a "presumptively reasonable fee" as in the case for calculating a statutory attorney fee award due to a prevailing party. See Agence France Presse, 2015 WL 13021413, at *8; see, e.g., Hervochon, 2019 WL 2451295, at *3-6; Figueroa v. City of New York, 2011 WL 5547976, at *3-4 (S.D.N.Y. Nov. 15, 2011).[4]

B. Preliminary Matters

We first address two preliminary issues. The first issue concerns the fact that Colihan is currently suspended from the practice of law in this Court. See App. Div. Order. If a former attorney is discharged for cause, he may not claim a charging lien. See, e.g., Shalom Toy, Inc. v. Each & Every One of the Members of the N.Y. Prop. Ins. Underwriting Ass'n, 239 A.D.2d 196, 198 (1st Dep't 1997). Indeed, he "is not entitled to legal fees" at all. Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C., 370 F.3d 259, 263 (2d Cir. 2004) (citing Teichner by Teichner v. W & J Holsteins, Inc., 64 N.Y.2d 977, 979 (1985)). Case law holds, however, that an attorney may recover legal fees for services rendered prior to suspension or disbarment "so long as the misconduct involved does not relate to the representation for which the fees are sought." Leontios v. Arzanipour, 22 A.D.3d 272, 273 (1st Dep't 2005) (citation omitted); see, e.g., Wittels v. Sanford, 137 A.D.3d 657, 658 (1st Dep't 2016); Glinkenhouse v.

---

[4] Colihan attaches a copy of an undated agreement signed by some of the attorneys on this case asserting that any division of fees among attorneys will be calculated at the attorney's "hourly rate." See Agreement (annexed as Ex. B to Fourth Colihan Fees Decl.). This agreement concludes with the following sentence: "[i]n the event there is a 'global' settlement of this case the parties will attempt to come to an agreement concerning an equitable distribution of fees." Id. The contingency contemplated by the agreement — a global settlement of both merits claims and fee claims — has now occurred and the parties obviously have not reached an agreement on the distribution of fees. Thus, the other terms of the contract are no longer in effect and we do not consider them in adjudicating this dispute.

Karp, 60 A.D.3d 630, 632 (2d Dep't 2009); Yanez v. New York City Health & Hosps. Corp., 248 A.D.2d 527, 527 (2d Dep't 1998); see also Argro v. Osborne, 2016 WL 1464221, at *4 (N.D.N.Y. Mar. 25, 2016) (while some jurisdictions hold that a "charging lien may be forfeited by an attorney who is suspended from the practice of law," New York state "takes a more forgiving approach, permitting a suspended attorney to seek recovery for services rendered prior to her suspension") (citation omitted). Indeed, a New York state regulation specifically permits a suspended attorney to collect fees on a "quantum meruit basis for services rendered prior to the effective date of the disbarment or suspension." 22 NYCRR § 1240.15(g); accord Grossbarth v. Dankner, Milstein & Ruffo, P.C., 157 A.D.3d 681, 681-82 (2d Dep't 2018). Here, Colihan was not suspended for any misconduct relating to the instant case. Thus, Colihan's suspension does not prevent him from seeking a portion of fees.

Second, as provided in 22 NYCRR § 1215.1, "[e]xcept in limited circumstances" not applicable here, "an attorney must provide his or her client with a written letter of engagement or enter into a written retainer agreement explaining, inter alia, the scope of the legal services to be provided, the fees to be charged, and the expenses and billing practices." Gary Friedman, P.C. v. O'Neill, 115 A.D.3d 792, 793 (2d Dep't 2014). Pawar opposes Colihan's application in part on the basis that Colihan has not provided evidence of an engagement letter or retainer agreement. Pawar Fees Mem. at 7-8. There is no dispute that Colihan actually appeared as plaintiff's attorney in this case. Indeed, Pawar acknowledges that Colihan "did a great deal of work" on the case "over a period of 2-3 years." First Pawar Decl. ¶ 27. For his part, Colihan avers a retainer agreement exists but that he cannot locate it. Colihan Fees Mem. at *5.

The authorities cited by Pawar do not support the notion that Colihan is barred from seeking fees based merely on his failure to produce the retainer agreement. Here, the entitlement

11

to attorney's fees has already been determined and the only issue is the proper apportionment of fees. Under these circumstances, we do not view case law regarding the effect of noncompliance with Section 1215.1 — whose purpose is to fully inform clients of the terms of the attorney's retention — to be applicable. Indeed, some cases specifically permit the collection of fees under New York Judiciary Law § 475 even in the absence of a duly executed retainer agreement or letter of engagement. See, e.g., Grossbarth, 157 A.D.3d at 682; Fuentes v. Brookhaven Mem'l Hosp., 43 A.D.3d 992, 994 (2d Dep't 2007); Wapner, Koplovitz & Futerfas, P.L.L.C. v. Solomon, 7 A.D.3d 914, 915-16 (3d Dep't 2004); K.E.C. v. C.A.C., 173 Misc. 2d 592, 600 (Sup. Ct. 1997).

    C. Analysis

As already discussed, to determine the attorneys' shares of the proceeds, we examine "'the time and labor spent by each, the actual work performed, the difficulty of the questions involved, the skill required to handle the matter, the attorney's skills and experience, and the effectiveness of counsel in bringing the matter to resolution.'" Mason, 2016 WL 2766652, at *4 (quoting Buchta, 296 A.D.2d at 689-90). As to the attorneys' skills and experience, we find no significant differences. See generally Declaration of Vik Pawar in Support of Fees (annexed as Ex. 2 to Second Pawar Decl.); Declaration of Robert Blossner in Support of Fees (annexed as Ex. 3 to Second Pawar Decl.); Declaration of Edward Zaloba in Support of Fees (annexed as Ex. 4 to Second Pawar Decl.); Colihan Fees Mem. at *8. As to the difficulty of the questions presented to each set of attorneys and the skill required by each attorney, the attorneys operated at two distinct phases of the case — filing, discovery, and summary judgment by Colihan, and settlement and trial preparation for the Pawar attorneys. Nonetheless, we view the skills required to be equivalent and the questions presented to be of equal difficulty. We see no

difference in effectiveness either. Colihan successfully took the case through discovery and resisted summary judgment. The Pawar attorneys made the appropriate pretrial filings, made submissions for and attended a settlement conference, prepared for trial, and obtained a settlement satisfactory to the client.

We thus view the question of a fair apportionment to center largely on the amount of time expended by the attorneys and whether that time was appropriate to the actual tasks the attorneys accomplished.

As to the time spent by the attorneys, we are severely hampered in this exercise by the fact that Colihan, Blossner, and Zaloba failed to keep contemporaneous time records. Blossner and Zaloba are clear that they did not keep such records. See Second Pawar Decl ¶¶ 3, 4; Blossner Supp. Decl. at *1; Zaloba Supp. Decl. at *4. Although has Colihan stated that he did in fact keep contemporaneous time records, see Apr. 26 Conference Tr. at 6, he has never made that claim in a sworn affidavit or declaration, and has never explained how the time summaries he submitted to this Court were based on anything other than his recollection. Notwithstanding the lack of any contemporaneous records, Colihan provided a detailed summary of his hours expended on litigation tasks on certain dates from October 28, 2015, to February 19, 2018. See Statement of Services (annexed to Fifth Colihan Fees Decl.) ("Colihan Statement of Services"). The time estimates are extremely precise — for example, showing 5.1 hours for "Preparation for deposition of def. Frank Desiderato & def. Amaty" on 12/5/2016; 2.1 hours for "Review chart of Healthcare Associates for plaintiff's medical records" on 4/2/2017; and 3.7 hours for "Compose R 56.1 Counterstatement" on 6/17/2017. See id. at *5, *8, *10. But when the Court requested an explanation for how he arrived at these hours (Docket ## 259, 260), Colihan never provided that explanation — either for these dates or for any other dates. It seems unlikely, if not

13

impossible, that one could recall the exact amount of time (to the tenth of an hour) expended on a particular litigation task that occurred years earlier. Thus, we cannot accept the accuracy of Colihan's claim to hours and we cannot give Colihan's claim full weight. The same is true, of course, for Zaloba and Blossner's records.[5]

We note that we are completely mystified by any attorney's failure to keep contemporaneous time records in this case. A party who brings a case under 42 U.S.C. § 1983 is entitled to an award of attorney's fees under 42 U.S.C. § 1988(b) if it prevails. And it has long been established that (1) the attorney fee award belongs to the client, not the attorney, see, e.g., Sanchez-Ramirez v. Masters Food Serv. Inc., 2017 WL 3600423, at *3 (S.D.N.Y. Aug. 18, 2017 ("attorney's fees obtained by statutory authority belong to the client, not counsel") (citation omitted), and (2) any application for attorney's fees must be supported by contemporaneous time records, see, e.g., Scott v. City of N.Y., 626 F.3d 130, 133 (2d Cir. 2010) (per curiam). Thus, an attorney's failure to keep contemporaneous time records is virtually destined to prevent any award of statutory attorney's fees, which greatly prejudices the client inasmuch as it diminishes the funds available to pay attorney's fees. It is thus not surprising that in New York, "[a] lawyer has an ethical obligation to keep sufficiently accurate and detailed records from which it can be determine[d] the reasonableness of his fee." Realuyo v. Diaz, 2006 WL 695683, at *14 (S.D.N.Y. Mar. 17, 2006) (citing Matter of Jackson, 120 A.D.2d 309, 315 (3d Dep't 1986), and Matter of Phelan, 173 A.D.2d 621, 622 (2d Dep't 1991)).

While we keep the attorneys' failures in mind in examining all the non-complying attorneys' time records, it is especially acute in the case of Colihan, who has asserted that he

---

[5] We do, however, give some consideration to the fact that Blossner and Zaloba responded to the Court's orders by providing at least some explanation (and documentation) as to how their billing summaries were compiled. See Docket ## 261, 262.

expended "250.8 " hours on this case from October 2015 to February 2018. See Colihan Statement of Services at *11. Blossner and Zaloba together account for only 102.25 hours out of the total of 259.05 claimed by the Pawar attorneys. See generally Time Records of Vik Pawar in Support of Fees (annexed as Ex. 2a to Second Pawar Decl.) ("Pawar Time Records"); Time Records of Robert Blossner in Support of Fees (annexed as Ex. 3a to Second Pawar Decl.) ("Blossner Time Records"); Time Records of Edward Zaloba in Support of Fees (annexed as Ex. 4a to Second Pawar Decl.) ("Zaloba Time Records"). Thus the problem is far more serious with respect to Colihan.

However, while we do not put much stock in the precise hours listed by Colihan, we nonetheless accept that Colihan performed significant work on this case. This work included filings on ECF over the years, communications with opposing counsel, and discovery requests. See Colihan Fees Decl.; Third Colihan Fees Decl.; Final Colihan Fees Decl. More significantly, Colihan took at least 19 depositions from November 2016 to March 2017 (although some were exceedingly short). See Second Colihan Fees Decl. While Colihan has not summarized the tasks he performed by hours, our own examination of his submissions shows that he claims to have spent 24.2 hours conducting the depositions and that he claims to have spent approximately 59 hours preparing for them. See Colihan Statement of Services. An even more significant amount of time was purportedly spent on the briefing on defendants' motion for summary judgment, which included Colihan's preparation of a declaration, memorandum, and 56.1 statement in opposition (Docket ## 126-28). By our calculation, Colihan is claiming a total of approximately 105 hours for the summary judgment submissions. See Colihan Statement of Services. While we find that the amount of time spent on depositions appears to be justified, the amount of time to prepare the summary judgment papers — based on our examination of these

papers on the docket — is excessive.

For their part, the Pawar attorneys claim to have expended a total of 259.05 hours on the case. This includes 156.8 hours by Pawar, see Pawar Time Records; 28 hours by Blossner, see Blossner Time Records; and 74.25 hours by Zaloba, see Zaloba Time Records.[6] Pawar avers that although Colihan performed a significant amount of work over a period of two to three years, Pawar's entry into the case as plaintiff's counsel meant that Pawar and his colleagues had to "duplicate" Colihan's work to get ready for trial at the direction of Judge Koeltl. First Pawar Decl. ¶¶ 9, 26-27. Certainly, Pawar engaged in a number of tasks to move the case along as directed by the court. These included reviewing the case file inherited from Colihan, preparing for a court-ordered settlement conference, preparing motions in limine, preparing voir dire and draft jury instructions, responding to a motion to compel, preparing witnesses, reviewing medical records, and engaging an expert, all before the case settled in December 2018. See Pawar Time Records; Zaloba Time Records; Blossner Time Records. In the end, the Pawar attorneys took the case over on short notice, prepared for trial, and ultimately were able to settle the case before trial for a satisfactory amount for the client. We find that the total number of hours claimed is reasonable.

With little sense of irony, Colihan argues that specific time entries listed by Pawar, Blossner, and Zaloba should be "disallowed" for various reasons. See Colihan Reply Mem. at *7-10. We reject these arguments because Colihan has provided "no evidence that [the

---

[6] Pawar's time entries are based on his contemporaneous billing records, see Second Pawar Decl. ¶ 2, though they suffer in some instances because the records indicate the attorney to be the Pawar Law Group ("PLG"), making it impossible to know by whom the task was performed. See, e.g., Pawar Time Records at 5 (3 hours for communications with Colihan "re: expert" billed for PLG on 11/1); see also id. at 10 (0.3 hours for "[s]ettlement talks" billed for Blossner on 8/9), 12 (1 hour regarding "motion for extension" billed for Blossner on 7/16).

attorneys'] representations are false[,]" and "[i]n the absence of evidence to the contrary," the statements made by Pawar, Blossner, and Zaloba generally "establish[ ] the sufficiency of the time records offered." Brennan v. New York Law Sch., 2012 WL 4177736, at *10 (S.D.N.Y. Aug. 15, 2012) (citing cases), adopted, 2012 WL 4195826 (S.D.N.Y. Sept. 20, 2012).

In the end, we accept that the Pawar attorneys spent approximately the same number of hours on the case as Colihan, though we are unable to make a precise determination due to a lack of contemporaneous records. Nonetheless, we believe the failure must weigh more heavily on Colihan because he is claiming a far larger number of unsupported hours than the Pawar attorneys. Having reviewed the parties' submissions we conclude that, after costs are deducted, Colihan should obtain 45% of the fees and that the Pawar attorneys should obtain the remaining 55%.

As for costs, Colihan provides evidence of costs in one of his declarations, in which he explains that he incurred $1,760 in service and filing fees, Second Colihan Decl. ¶¶ 1, 3, and to which he attaches a purported invoice of court reporter fees for depositions totaling $10,941.50, see Ex. 31 (annexed to Second Colihan Decl.). Colihan states he is "claiming total out of pocket expenses" of $12,701. Second Colihan Decl. ¶ 3. Thus, Colihan has supported an award of $12,701 in total costs. Pawar agrees that Colihan is due at least this amount. See, e.g., Pawar Mem. at 4. Accordingly, Colihan is entitled to $12,701 in costs.

\*   \*   \*

In sum, the $85,000 is distributed as follows: Colihan is awarded $12,701 in costs and $32,535 in fees for a total of $45,236. The Pawar attorneys are awarded $39,764 in fees.

## III. CONCLUSION

For the foregoing reasons, the parties' applications for fees (Docket ## 221, 242) are

denied in part and granted in part. Pawar shall transmit to Colihan the sum of $45,236 within 14 days of the date of this Opinion and Order and may retain the remainder for the Pawar attorneys.

SO ORDERED.

Dated: New York, New York
September 12, 2019

GABRIEL W. GORENSTEIN
United States Magistrate Judge